NELDA CRATSLEY, Adm'r of the Estate of Raymond Cratsley, Deceased, Plaintiff-Appellant, *v.* COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

First District (5th Division)   No. 61412

Opinion filed April 23, 1976.

Mahoney and McArdle, Chartered, of Chicago (Michael J. McArdle, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Stephen A. Milwid, Richard E. Mueller, and John J. Berwanger, of counsel), for appellee.

Mr. JUSTICE BARRETT delivered the opinion of the court:

This appeal involves a suit by Nelda Cratsley as administrator of the estate of Raymond Cratsley, deceased, to recover for personal injuries received by the decedent, a city of Chicago sanitation worker, when he came into contact with a high-voltage overhead electrical transmission line of the defendant Commonwealth Edison Company while in the course of his employment in an alley in Chicago, Illinois.

The trial court at the close of plaintiff's case dismissed the strict liability count of plaintiff's complaint and also struck and dismissed certain counts of negligence allegedly committed by defendant. The jury returned a verdict for defendant, and answered "yes" to a special interrogatory concerning decedent's contributory negligence. Plaintiff appeals from the judgment entered on the jury verdict.

On the night of June 25, 1969, severe thunderstorms passed through the Chicago area with wind gusts in excess of 50 miles per hour. This weather condition caused many transmission wires in the Chicago area to fall. Though the exact time that the electrical wire in question broke and fell is unknown, it appears to have been first noticed hanging in the alley on June 26, 1969, at about 3:30 or 3:45 p.m. by two neighborhood boys. A second broken wire was observed by the boys to be hanging 20 to 25 feet away from the first wire.

A garbage truck on which decedent was employed as a laborer entered the alley at about 4:15 p.m. The truck proceeded along the alley with the laborers emptying cans of garbage at its rear. Raymond Garlanger, the driver of the truck, testified that after the truck had proceeded to about the middle of the alley he observed two small boys standing by some garbage drums holding a small sign which read, "Danger, live wire." Garlanger stated that decedent walked from the rear of the truck along the driver's side past the driver's open window at which time Garlanger spoke to decedent saying "There's wire hanging there. Be careful. It might be hot." Though decedent was about one foot away from the side of the truck at the time the driver spoke to him, he nevertheless proceeded toward the wire and reached over his head to grab it with his left hand while using his right hand to flag the truck through. While holding the wire, decedent took a step backwards and came into contact with either a metal garbage can or metal fence. Decedent suffered severe electrical burns, the consequences of which resulted in his ultimate death. Garlanger stated that there had been sufficient clearance for the truck to pass without any movement of the wire.

The wire which was covered with a weather proofing material carried between 2100 and 2400 volts and was strung 30 to 35 feet above the ground before it broke. A Commonwealth Edison Company repair crew reported "tree contacts" and "wind" as the cause of the break.

Plaintiff's first contention on appeal is that the court erred in dismissing count four of her complaint which stated a cause of action sounding in strict tort liability. The Illinois Supreme Court in the leading case of *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E.2d 182, adopted the doctrine of strict tort liability which coincided with the view expressed in the Restatement (Second) of Torts §402(A) (1965). That section states that:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

58

■■ The substance of plaintiff's allegation in count four of her complaint is that defendant is in the business of manufacturing, transmitting and selling to members of the public electrical energy, including poles, generators, transmission wires and the like; and that these transmission wires are not reasonably safe for their intended use because they are not of adequate strength or thickness or durability to withstand the wear and tear of the transmission of energy or to withstand the amperes of current transmitted by the defendant through the lines. We do not believe that these allegations are sufficient to establish a cause of action based upon strict tort liability. In a recent case involving injuries which were suffered when an electric current arced from power wires to an antenna, our Supreme Court affirmed the dismissal of a strict liability count based upon a failure to state a cause of action, stating that:

"Even if plaintiff's contentions were accepted, the doctrine of strict liability would still not be applicable. The power wires were not sold to any consumer, but were owned and controlled by Illinois Power. The only 'product' that was in the process of being sold was the electricity itself, and plaintiff does not contend that there was any defect in the electricity." *(Genaust v. Illinois Power Co.,* 62 Ill. 2d 456, 464, 343 N.E.2d 465, 470.)

Similarly, in the instant case the transmission wires remained under the control of defendant, and contrary to plaintiff's allegations were not sold to any consumer. Moreover, plaintiff does not plead a defect in the electrical current itself, but rather that the weakness of the wire made it impossible for it to withstand the force of the amperes exerted upon it. We find that the trial court properly dismissed count four of plaintiff's complaint for failure to state a cause of action.

■■ Plaintiff asserts in her next point on appeal that the trial court erred in permitting Garlanger to testify that he warned decedent of the wire because there was no evidence that decedent had heard the warning. The credibility of a witness and the weight to be given his testimony is a matter for the jury to determine and unless the finding of the jury is manifestly against the weight of the evidence, it will not be disturbed on appeal. *(Horst v. Morand Brothers Beverage Co.,* 96 Ill. App. 2d 68, 237 N.E.2d 732.) We believe that it was properly left for the jury to conclude whether decedent heard or should have heard the driver's warning. In any event, it was not error.

Plaintiff then contends that the trial court committed reversible error in permitting William McDonald, staff assistant to the operating manager at Commonwealth Edison Co., to testify that defendant had a system of inspection of wires after defendant had stated in answers to interrogatories that it did not know of and had no records of any inspections of the wires.

The interrogatories and answers in question read as follows:

"INTERROGATORY NO. 17

State the last three dates of inspection prior to June 26, 1969, that the wire, that caused injury to the plaintiff, was inspected by the defendant, and state the names, addresses and job titles of the person or persons conducting said investigations or inspections?

ANSWER

Defendant has no record and does not know.

INTERROGATORY NO. 18

In reference to the previous interrogatory, state whether or not the results of said investigation or inspections were written or reported.

ANSWER

Defendant has no record and does not know."

The parties also entered into a stipulation that if defendant's general counsel would be asked the same question as in Interrogatory 17, he would give an answer identical to that given in the interrogatory.

■■ William McDonald testified that defendant's general procedures were to inspect a transmission system as the one in question every five years or every year if it was a critical circuit. We do not find this testimony in serious conflict with the answers to interrogatories 17 and 18 or to the stipulation since the interrogatories related only to defendant's knowledge of specific dates of inspection. Since plaintiff did not submit a more general interrogatory with respect to whether any inspection or inspections were made, defendant's witness was properly permitted to testify to general inspection procedures. It is well settled that the admission of evidence rests largely in the discretion of the trial court and its decision should be reversed only when such discretion has been clearly abused. (*Trippel v. Lott,* 19 Ill. App. 3d 936, 312 N.E.2d 369.) We find that the trial judge did not abuse his discretion in ruling that defendant could introduce evidence of its general system of inspection.

■■ Plaintiff also submits that the court erred by not having instructed the jury in accordance with plaintiff's theory of liability. We find no merit in plaintiff's argument. The evidence presented by plaintiff at trial revealed that the transmission wire fell, that defendant was notified, that the wire remained on the ground, that it was not properly insulated in that the insulation or weatherproofing had been worn off, that defendant did not warn plaintiff that the wire was charged, and that plaintiff was subsequently injured. The instruction that was given to the jury with respect to plaintiff's claim of negligence was tendered by defendant and reads in part:

"The plaintiff claims that plaintiff's decedent was injured and

sustained damage while exercising ordinary care and that the defendant, COMMONWEALTH EDISON COMPANY, was negligent in one or more of the following respects:

In permitting a high tension electrical power line to fall upon the ground; and

In failing to shut down or interrupt power in the broken wire; and

In failing to warn persons working in the area of the wire that it was charged with electricity.

The plaintiff further claims that one or more of the foregoing was a proximate cause of the injuries to plaintiff's decedent."

It is an established rule of law that each party is entitled to have the jury instructed on its theory of the case provided such theory finds support in evidence. (*Cohn v. Petroleum Heat & Power Co.*, 44 Ill. App. 2d 23, 194 N.E.2d 29.) However, a party cannot be heard to complain where no instruction was tendered. (*Cobb v. Marshall Field & Co.*, 22 Ill. App. 2d 143, 159 N.E.2d 520.) Plaintiff submits that the jury should have been instructed that defendant was negligent because it failed to properly insulate its high power transmission lines. This court has carefully reviewed the record and has found nothing to indicate that plaintiff tendered an instruction on this point. The above quoted instruction instructed the jury with respect to plaintiff's theory of liability based on defendant's permitting the wire to fall, his failure to warn, and his failure to shut off power. We find that this instruction adequately presented plaintiff's theory of the case.

■■ Plaintiff's next point on appeal is that the court erred in submitting defendant's special interrogatory relating to plaintiff's contributory negligence to the jury because no competent evidence of contributory negligence was presented at trial. Plaintiff, citing *Bitner v. Lester B. Knight & Associates*, 16 Ill. App. 3d 857, 307 N.E.2d 136, contends that defendant failed to prove an essential element of contributory negligence; that plaintiff knew or by the exercise of ordinary care should have known of the circumstances out of which the danger arose. We are in full agreement with the proposition of law that is found in *Bitner* and believe that even apart from any evidence of a warning to decedent, the presence of the insulated wire hanging in the alley should have apprised decedent of the danger of touching it. The proposition that the reasonable man is presumed to know of the electrical force found in transmission wires was advanced in *Austin v. Public Service Co.*, 299 Ill. 112, 132 N.E. 458, where a 14-year-old boy was electrocuted as he grabbed an overhead electrified wire while walking on an iron beam of a bridge. In holding that the decedent was not in the exercise of ordinary care for his own safety, the Illinois Supreme Court stated:

"A boy fourteen years old, who has been raised in the city, knows as well as a man that insulated wires carried upon poles are likely to be charged with a deadly load of electricity and that it is not safe to touch them or to go where he is likely to fall into them."

In the instant case it is clear from the record that decedent, a man of 45 years of age, voluntarily took hold of the downed wire. It is reasonable to expect that by the exercise of ordinary care he should have known that the wire may have been electrified. We find that the special interrogatory was properly presented to the jury.

■■ Plaintiff also submits that the trial court erred in not directing a verdict for plaintiff at the close of all the evidence. In order to have allowed plaintiff's motion, it would have been necessary for the trial court and for this court now to determine, after considering all of the evidence in its aspect most favorable to the defendant, that the evidence presented so overwhelmingly favored plaintiff that no contrary verdict could stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504.) We do not believe that such a determination can be made in the instant case.

The judgment of the trial court is affirmed.

Affirmed.

LORENZ, P. J., and SULLIVAN, J., concur.