PLASTI-DRUM CORPORATION, Plaintiff and Counterdefendant-Appellee, *v.* VIRGINIA FERRELL, Indiv. and as Adm'r of the Estate of Bert M. Ferrell, Deceased, Defendant and Counterplaintiff-Appellant.

Third District   No. 78-49

Opinion filed March 28, 1979.—Rehearing denied May 8, 1979.

Ronald L. Barnard and William V. McGrath, both of Barnard, Marconi & McGrath, Ltd., of Chicago, for appellant.

Thomas R. Wilson and Michael W. Hansen, both of Herschbach, Tracy, Johnson, Bertani and Wilson, of Joliet, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This appeal is the result of involved litigation between Virginia Ferrell, individually, and as administrator of the estate of Bert Ferrell, her deceased husband, and Plasti-Drum Corporation, an Illinois Corporation located in Lockport, Illinois. This action was first brought by Plasti-Drum Corporation (hereinafter referred to as "Plasti-Drum"), seeking to enjoin Virginia Ferrell from entering plaintiff's place of business; from

proceeding with disposing of any of the collateral for certain notes made by plaintiff and held by the estate of Bert Ferrell; from communicating with any of plaintiff's suppliers or making any representations of plaintiff's financial condition to any of plaintiff's suppliers; and asking that the court declare that the aforementioned notes made by plaintiff and held by the estate were not in default and that defendant Ferrell could not exercise her rights under the Illinois Commercial Code or Security Agreement. Virginia Ferrell counterclaimed asking for an accounting of interest, salary, and expense reimbursement due defendant's intestate; judgment against Plasti-Drum in the amount of $168,802, plus interest and attorney's fees, or, in the alternative, delivery of the collateral securing certain notes; payment to defendant of 10% of plaintiff's profits for fiscal year ending April 30, 1976; payment of certain water charges; and possession of the premises occupied by plaintiff under a lease from defendant's intestate, plus judgment for accrued rent and attorney's fees.

After a bench trial, the court ordered that $17,547.42, which had been deposited with the court by Plasti-Drum, could be withdrawn by defendant Ferrell, conditioned upon her acceptance of the moneys as satisfaction of certain debts of Plasti-Drum to the estate. In addition, the court granted her judgment for the water charges. As to all other issues, the court found for plaintiff Plasti-Drum. Defendant-counterplaintiff Virginia Ferrell appeals from the judgments against her. She raises nine issues in this appeal. Prior to setting out the questions raised, it is necessary to summarize the pertinent facts concerning the parties' business relationships.

The record discloses that Bert Ferrell, defendant's intestate, and Walter Craig, current president of Plasti-Drum, incorporated Plasti-Drum in 1972, each holding 5,000 shares of common stock and serving as both officer and director. In 1973, Plasti-Drum began operations in a Lockport building leased to it by the Drovers National Bank, as trustee under a 1973 trust agreement. Bert Ferrell was the sole beneficiary under the trust. Ferrell had given a mortgage on the property to Drovers and Ferrell's monthly mortgage payments were $4,388. The property was leased to Plasti-Drum at the rate of $5,500 monthly. Prior to May 1975, the corporation, in checks signed by its president Bert Ferrell, paid the monthly rent to Ferrell himself. In May 1975, a change in practice was effected by the corporation. Then, and thereafter, Plasti-Drum, in checks signed by its president Walter Craig, paid $4,388, the amount of the mortgage on the property, directly to Drovers Bank. According to Craig's testimony, the remainder due Bert Ferrell under the lease was suspended. The only rental payments made by the corporation thereafter, until after the death of Bert Ferrell, were those in the amount of $4,388, paid to Drovers.

Bert Ferrell was not only a principal shareholder of the corporation

and its landlord, but he also became a principal creditor of the corporation. For capital that he had loaned the corporation, Plasti-Drum delivered to Ferrell, in April 1975, a promissory note in the amount of $153,802.14, at 8 percent interest, payment commencing May 1, 1976, and the note to be paid in 5 annual installments.

In January 1976, Bert Ferrell, Walter Craig, and Plasti-Drum entered into various agreements which altered the business and financial arrangements between them. Ferrell resigned as officer and director, and he and Plasti-Drum entered into a stock redemption agreement whereby it purchased his 5,000 shares of stock. The purchase price included payments to Ferrell of 10% of the corporation's net profits for five years and lifetime payments to him of $2,000 monthly, beginning February 1, 1976. The agreement was made on January 19, 1976. In another provision of the stock redemption agreement, Bert Ferrell agreed to cancel, as of the execution of the agreement, the April 1975 promissory note for $153,802.14; and the corporation agreed to execute and deliver a new promissory note, in the amount of $153,802.14, dated January 19, 1976, payable at 7 percent per annum, with a payment schedule spread over 5 years, the first payment due on January 19, 1977. The agreement also provided that the corporation would execute and deliver a security agreement to Ferrell covering all assets of the corporation, in order to secure payments due under the stock redemption agreement.

In addition to the $153,802.14 promissory note covered in the stock redemption agreement, the corporation on January 19 also executed and delivered a promissory note to Ferrell in the amount of $15,000, at 5 percent interest, a payment of $5,000 to be made February 19, 1976, and monthly payments to continue thereafter until paid in full. An additional $5,000 cash was paid to Ferrell on January 19. The second note and the cash payment were not covered in the aforementioned stock redemption agreement. They are covered in a memorandum of agreement executed by the parties on January 19, 1976. In that agreement the parties set forth the specifics above mentioned with respect to the stock sale. In addition, the agreement provides for the cash payment of $5,000 and the $15,000 note.

The other document executed on January 19, 1976, was a security agreement between Plasti-Drum, by its president, Craig, and Bert Ferrell, as secured party. Ferrell was given a security interest in certain of Plasti-Drum's production machinery, in its present and future accounts receivable, and in all inventory, present and future. The agreement states that the security interest is:

> "* * * given to secure the payment of any and all indebtedness and liabilities whatsoever of the Debtor to the Secured Party, whether direct or indirect, absolute or contingent, or due or to

become due, and whether now existing or hereafter arising, and together with all costs, attorney's fees, and expenses of the Secured Party in respect to the indebtedness of the Collateral (all herein collectively called the "Obligations") which current indebtedness is in the amount of One Hundred Sixty Eight Thousand Eight Hundred Two ($168,802.00) Dollars and is evidenced by Notes now held by the SECURED PARTY."

The security agreement also provided, in pertinent part, that Plasti-Drum would be in default if it failed to pay any of the obligations when due, or if, at any time, the secured party felt insecure. Upon such default, the secured party was given the option to declare "any one or more or all of the Obligations immediately due and payable."

The foregoing agreements, and documents appurtenant thereto, were executed by Craig and Ferrell on January 19, 1976. On February 19, 1976, Drovers National Bank, as trustee of the property, served Plasti-Drum with a demand for back rent in the sum of $11,000. Rental payments for January and February had not been paid. Plasti-Drum was given 5 days to make the rental payments or it would face termination of the lease. Within the time allowed, Plasti-Drum gave Drovers two checks, each in the amount of $4,388, to cover the rent due. The payments were accepted by Drovers, as had similar monthly rental payments made by Plasti-Drum since May 1975.

On February 28, 1976, Bert Ferrell died. Prior to his death, Plasti-Drum had not made the February 19, 1976, $5,000 installment payment called for in the $15,000 note, nor had it paid Ferrell the $2,000 monthly payment for February. Plasti-Drum made no payments on either of these obligations for several months after Ferrell's death, although it did make monthly rental payments to Drovers, in the amount of $4,388 each time, for March, April, May and June, 1976.

After Ferrell's death, Plasti-Drum informed attorneys for Mrs. Virginia Ferrell, who was to be named administrator of the estate of Bert Ferrell, that it would pay its indebtedness to the estate when such became due. Her attorneys informed counsel for the corporation that they would advise him of the appointment of the administrator so that payment could be made. In a letter of May 11, 1976, they did so, instructing Plasti-Drum to continue to make mortgage payments as in the past, the mortgage payment to Drovers, with the remainder now going to the estate. The letter also informed Plasti-Drum that the other payments should be made to the representative of the estate, Virginia Ferrell. No installment payments on the $15,000 note, several of which were then past due, nor on the remainder of rent due were made in response to the letter. Then, on May 24, 1976, Drovers, as trustee of the property, and Virginia Ferrell, as administrator of her husband's estate, filed a forcible entry and detainer

action against Plasti-Drum, alleging back rent due for the months from May 1975 at $1,112 monthly. That monthly sum represented the difference between the amount of the mortgage payments made to Drovers and the rent as set forth in the lease. No payment was made by Plasti-Drum.

On June 18, 1976, Virginia Ferrell informed Plasti-Drum that as a result of the default on payments due under the $15,000 note, and pursuant to the acceleration provisions of the security agreement, the estate was declaring the entire amount due and payable. In a separate letter of the same date, Plasti-Drum was informed that the estate was also accelerating the $153,802.14 note as a result of the default on the smaller note.

On June 24, 1976, by letter, Plasti-Drum tendered to the estate payment on the $15,000 note in the amount of $15,323.42, said amount covering both principal and interest due under the note. Plasti-Drum adopted the position that the note was given to cover accrued rental payments to Bert Ferrell. Also tendered at that time was a check in the amount of $2,224 for the rent owed to the estate for May and June. The usual payments of $4,388 had been made to Drovers during the months they became due. The tender was not accepted. The moneys tendered were subsequently deposited with the court pending the outcome of litigation.

On July 9, 1976, Plasti-Drum filed a complaint in the Circuit Court of Will County against Virginia Ferrell, individually, and as administrator of the estate of Bert Ferrell. Plasti-Drum sought an injunction restraining Ferrell from entering the building occupied by it and determinations of its status and rights as a tenant and of the rights and liabilities of the parties on the two notes and the security agreement. A countercomplaint was filed by Virginia Ferrell which sought recovery on both notes, totaling $168,802, plus interest and fees, possession of the premises, back rent, plus fees and costs, and back expenses and salaries allegedly owing to defendant's intestate. The forcible entry and detainer action was then consolidated with the present suit, an amended complaint in that action being filed in June 1977, alleging back rent due of $15,568 for the months from May 1975 until June 1976. Trial before the court was held in September and November of 1976.

The court, in a written opinion, ordered that the $17,547.42 on deposit with it could be withdrawn by Mrs. Ferrell, conditioned upon her acceptance of it as satisfaction for the back rent and the February salary payment. The court also granted her judgment on the water charges. The court also found that she was not entitled to possession of the premises; that she was not entitled to unpaid rent accruing prior to the death of her intestate; that she was not entitled to interest accrued on the April 1975

$153,802.14 note prior to its cancellation; that she had improperly accelerated the $153,802 note and was not entitled to judgment thereon; and that an injunction would issue preventing her from entering the leased premises without prior authorization from Plasti-Drum or the court. On this appeal, appellant Virginia Ferrell asserts as error the court's judgments on those findings. In addition, issues are raised as to two evidentiary matters and the conditional judgment for $17,547.42, being the moneys on deposit. We shall proceed, finally, to those issues, leaving further factual development to be supplied as needed.

■■ ■ The first issue raised is whether the court erred in ruling that Virginia Ferrell (hereinafter appellant) was not entitled to possession of the premises leased to Plasti-Drum. Appellant argues that a proper five-day notice had been served upon Plasti-Drum in February 1976; that Plasti-Drum had not paid the rent due under the terms of the lease; and that, therefore, she was entitled to possession of the leased premises. We agree with the trial court that appellant was not entitled to a judgment for possession, although we base our decision on grounds not mentioned in the lower court's written order and opinion. Prior to any suit to terminate a lease under the forcible entry and detainer statute (Ill. Rev. Stat. 1975, ch. 57, par. 1 *et seq.*), a written demand for payment of delinquent rent must be served upon the tenant. (*Westerman v. Gilmore* (3d Dist. 1958), 17 Ill. App. 2d 455, 150 N.E.2d 660; Ill. Rev. Stat. 1975, ch. 57, par. 3; Ill. Rev. Stat. 1975, ch. 80, par. 8.) The record establishes that the February 18, 1976, five-day notice alleged a delinquency of $11,000 in back rent, covering rental payments due for January and February of 1976, and was served on Plasti-Drum. Plasti-Drum, in response to the notice, paid to Drovers National Bank, within the five days allowed, the customary sum to be applied as rental payment or $4,388 monthly for the two months. That monthly figure was the rental amount they paid to Drovers from May 1975 onward. Drovers accepted the rental payments from the corporation for January and February. They also accepted subsequent similar monthly payments for March, April, May and June of 1976. When, in May of 1976, appellant filed the forcible entry and detainer action which sought to terminate the lease, that action was not based upon the delinquency in rental payments for January and February of 1976. Rather, the action grounded the right to termination upon the failure by Plasti-Drum to make the full monthly rental payments for May 1975 through May 1976. The suit, then, was based upon a monthly failure to pay the difference between the amount specified in the lease, $5,500, and the mortgage payment amount, $4,388, for those months since May 1975. As such, a new and distinct breach of the terms of the lease, and a new and distinct delinquent sum, were put forward as the basis for the May forcible entry and detainer action. Under those circumstances, it was

incumbent upon Ferrell, prior to commencing suit, to give notice of the alleged breach and to make a demand for the rent allegedly due under that breach. (Ill. Rev. Stat. 1975, ch. 80, par. 8; *Westerman v. Gilmore* (1958), 17 Ill. App. 2d 455.) No such demand or notice was given by appellant to Plasti-Drum. Appellant cannot, as it seeks to, rely upon the previously issued five-day notice, since that notice dealt with an entirely different breach.

■■ When Plasti-Drum made the usual rental payments to Drovers in response to the February notice, and when those payments were accepted as usual by Drovers, Plasti-Drum could reasonably conclude that it had met the demands made in the February five-day notice. Before the lease could be terminated for a different breach, Plasti-Drum was entitled to another notice and opportunity to cure any alleged breach. The trial court did not err in refusing to enter judgment entitling appellant to possession of the property. We note also, as an additional basis for affirmance of the trial court's judgment, that Drovers National Bank, as landlord of the premises, had accepted usual monthly payments on the premises made by Plasti-Drum in March, April and May. It is an established rule that acceptance of rent for the month in which a forcible entry and detainer suit is brought acts as a waiver of the landlord's right to sue for a forfeiture based on those past delinquencies. (*Goldberg v. Pearl* (1923), 306 Ill. 436, 440-41, 138 N.E. 141; *Westerman v. Gilmore* (1958), 17 Ill. App. 2d 455, 462.) Acceptance by Drovers of the monthly payments acted to waive any right to sue for possession based upon those previous delinquencies. That conclusion is in accord with the above-stated rule and with the general rule of chancery disfavoring forfeitures. (*Patterson v. Northern Trust Co.* (1907), 230 Ill. 334, 338, 82 N.E. 837.) We find no error in the judgment entered by the trial court on the issue of possession of the premises.

The second issue raised by appellant Ferrell is whether the trial court erred in ruling that she was not entitled to unpaid rent on the premises, accruing prior to the death of her intestate. At issue here are the suspended amounts, $1,112 monthly, for rent due under the lease for the months from May 1975 through February 1976, the month in which Bert Ferrell died. It was Plasti-Drum's contention, accepted by the trial court, that the accrued back rent owing Bert Ferrell for May 1975 through January 1976 was covered in the agreements entered into on January 19, 1976. Specifically, it contends that the $5,000 cash payment and the $15,000 note satisfied the amount owed on account of accrued back rent. We note, initially, that the provision of the memorandum agreement which sets forth the $20,000 obligation (cash payment and note) is silent as to what, if any, obligations such payment and note were intended to satisfy. Virginia Ferrell contends that the cash payment and the note were payments

for past salary and expenses due Bert Ferrell and not for the suspended rental amounts. The trial court found that the parties to the January agreements intended that the cash payment and the $15,000 note covered the rental payments due Ferrell from May 1975.

■ Its conclusion is adequately supported in the record and we cannot say, as urged to by appellant, that its decision was contrary to the manifest weight of the evidence. In addition to some evidence (that the past rent was on the parties' minds prior to the January agreements and to the fact that the 5-day notice of February did not allege a delinquency in the accrued back rent from May 1975), there is the security agreement which was entered into between the parties on January 19, 1976, in connection with execution of the notes for $153,802.14 and $15,000. That security agreement states that the security interest is given to secure "payment of any and all indebtedness and liabilities whatsoever of the Debtor to the Secured Party, * * *, which current indebtedness is in the amount of One Hundred Sixty Eight Thousand Eight Hundred Two ($168,802) Dollars and is evidenced by Notes now held by the SECURED PARTY." The agreement is dated, as noted, January 19, 1976. The above-quoted language clearly indicates that, as of that date, the current total of any and all indebtedness whatsoever owed by the debtor, Plasti-Drum, to the secured party, Bert Ferrell, was in the amount of $168,802.14, the amount covered by the two notes. The conclusion to be drawn from this express statement of current indebtedness owing to Bert Ferrell is that the $5,000 cash payment and the $15,000 note, agreed to in the memorandum of agreement, were intended to cover the past indebtedness of the corporation to Bert Ferrell, including the accrued rental payments and any salary or expense moneys which might have been due.

We note that appellant's argument with respect to amounts due for salary and expenses is speculative and without substantial support in the record. The record establishes that the only indebtedness owed by Plasti-Drum to Bert Ferrell, as of January 19, 1976, was in the amount of $168,802.14 and that was covered by the two notes. There was no error in the trial court's refusal to enter judgment for the back rent from May 1975 through January 1976. With respect to the $1,112 monthly difference between rent due and mortgage payment *after* January 1976, however, Plasti-Drum owed those payments to the estate. The agreements and notes executed pursuant thereto obviously did not cover those payments which came due only after the parties had entered into the agreement. The security agreement spoke of current indebtedness as of January 19, 1976, and nothing in the agreements or record indicates that future rental payments to Ferrell were satisfied by the obligations entered into in January. To the extent that the trial court found that the $15,000 note satisfied the obligations of $1,112 monthly rental due for months after

January 1976, the judgment is reversed. Virginia Ferrell, as administrator of the estate of Bert Ferrell, is entitled to judgment in the amount of $1,112 monthly for each month, after January 1976, where such payments have not already been made to the estate. The determination of the correct amount shall be made by the trial court on remandment of this cause.

■■ The third issue raised by Virginia Ferrell is also determined on the basis of the statement of current indebtedness contained in the January 19, 1976, security agreement. Appellant Ferrell claims that the estate is entitled to accrued interest on the April 1975 note for $153,802.14, which note was cancelled pursuant to the terms of the stock redemption agreement. A new promissory note in the same amount, although with different interest, was executed on January 19, 1976. The trial court found that the parties intended to cancel the note and interest when the agreements were made. That decision is not contrary to the manifest weight of the evidence. As noted above, the current indebtedness of Plasti-Drum to Bert Ferrell as of January 19, 1976, was represented by the two notes executed by Plasti-Drum on that date. The trial court did not err in refusing to enter a judgment, apart from those notes, for accrued interest on the previously made, and cancelled, note for $153,802.14.

The fourth issue raised is whether the trial court erred in not entering an unconditional judgment for Ferrell on the $15,000 note and on the February lifetime payment of $2,000. The trial court ordered that $17,547.42 deposited with the court could be withdrawn by Virginia Ferrell, but that withdrawal would act as acceptance of payment in full for the $15,000 note and for the February payment of $2,000. This money was first tendered to the estate by Plasti-Drum on June 24, 1976. We find that the tender of payment, in the amount of $15,323.42, made on the note was an unconditional tender. Nothing in the letter accompanying the check for that amount places a condition upon the acceptance of the payment. Tender of the full payment on the $15,000 note operated to discharge Plasti-Drum from subsequent liability on this note for interest, costs and attorney's fees. (See Ill. Rev. Stat. 1975, ch. 26, par. 3—604(1).) Accordingly, withdrawal of $15,323.42 of the moneys on deposit with the court by the estate would constitute payment in full on the $15,000 obligation. We have already determined that the estate is not entitled to accrued back rent owing prior to January 19, 1976, as that debt was satisfied in the agreements of January 19. With respect to the additional $2,224 on deposit, it is noted that such moneys were tendered on June 24, 1976, as payment of the rental difference of $1,112 monthly for May and June, 1976. They were not tendered as payment of the $2,000 owed Bert Ferrell for February, under the terms of the January 19 agreements. The estate is entitled to that $2,000 payment, with interest from its due date of February 1, 1976. (Ill. Rev. Stat. 1975, ch. 74, par. 2.) We remand to the

trial court for a determination of the total amount due on that delinquent payment and provisions for its payment. With respect to the rental payments owed the estate from February 1976, as we stated earlier, we are remanding with instructions to enter a judgment in favor of the estate for those rental payments which have not been paid. The total of that amount, and any interest thereon is also to be determined upon remandment.

■■ The fifth issue raised by appellant Virginia Ferrell is whether the court erred in ruling that she had improperly and ineffectively accelerated the promissory note for $153,802.14. The estate had given notice of the acceleration of that note on June 18, 1976, pursuant to provisions in the security agreement allowing acceleration of any or all obligations in the event of Plasti-Drum's default on its obligations. Default, under the terms of the security agreement, occurred if the debtor failed to pay the obligations when due, or if the secured party felt insecure. The trial court held that the $153,802.14 note was improperly accelerated since good faith insecurity had not been shown by Virginia Ferrell. It is unnecessary for us to address ourselves to this conclusion and the extensive evidence on financial condition and felt insecurity. The record establishes that Virginia Ferrell, as administrator of the estate, properly accelerated the note and that the judgment of the court to the contrary was in error. The estate, at the time of acceleration, informed Plasti-Drum that it was accelerating the $153,802.14 note (1) because of the default from failure to pay the $15,000 note when due and (2) because of insecurity on the part of the secured party. The trial court, in its opinion accompanying the judgment, and Plasti-Drum, in its argument to this court, overlooked the former basis for acceleration. The estate, on the other hand, calls this issue the most crucial on appeal. The security agreement specifically provides, in paragraph 11(b), that a default exists when the debtor fails to pay the notes when due. Paragraph 12 of the agreement then states that upon any default, "the Secured Party may at its option and without notice or demand declare any one or more or all of the Obligations immediately due and payable." It is uncontested that at the time of acceleration, June 18, 1976, Plasti-Drum was in default on its payments under the $15,000 note. The $5,000 payment due February 19, 1976, had not been made, nor had monthly payments of $2,000 thereafter been made. Plasti-Drum's argument that it was waiting for official notification from the estate concerning the appointment of an administrator is unconvincing. Plasti-Drum was notified on May 11 that Mrs. Ferrell had been appointed and it was informed that payments should be made payable to the representative. Despite such notification, no payments on the $15,000 note were made until June 24, 1976, after notice of acceleration. The tender on that date, as noted earlier, operated to discharge Plasti-Drum for liability

against future interest, costs and fees. It did not act to cure the default which existed on June 18, 1976, or to otherwise alter the agreement of the parties with respect to the acceleration of the notes in the event of default. The trial court erred in not entering judgment on the $153,802.14 note which had been properly accelerated by Virginia Ferrell on June 18, 1976, pursuant to the express terms of the security agreement. The judgment of the trial court on this issue is reversed and, upon remandment, judgment shall be entered by the trial court in favor the estate in the sum of $153,802.14, plus any interest following acceleration that is determined to apply.

■■ The next issue raised by Virginia Ferrell on appeal is whether the court erred in entering an injunction restraining her from entering the leased premises without prior authorization from the court or approval from Plasti-Drum. It is established that an injunction is an exceptional remedy which is not granted as a matter of course, but with great caution and only when plaintiff's right to such relief is clearly established. (*Parsons v. Walker* (4th Dist. 1975), 28 Ill. App. 3d 517, 521, 328 N.E.2d 920.) As stated in *Shefner v. University National Bank* (1st Dist. 1976), 40 Ill. App. 3d 978, 981, 353 N.E.2d 126:

> "In order to authorize an injunction, there must be a clear showing of violation of the rights of the complainant and it must also appear that there is a specific injury by reason of such violation. [Citations.]"

The grant or denial of an injunction is within the discretionary powers of the court, and its decision on the matter will not be reversed unless an abuse of discretion is shown. (*Shefner v. University National Bank* (1976), 40 Ill. App. 3d 978, 981-82.) The basis for the injunction entered in the present case is the action of Mrs. Ferrell in visiting the Plasti-Drum building on three separate occasions during the summer of 1976. There is no dispute that Mrs. Ferrell, as administrator of the estate, had a right, under the terms of the lease, to have "free access to the premises for the purpose of examining the same." Plasti-Drum argues, however, that her visits during the summer of 1976 resulted in interference with its right, as a tenant, to the quiet and peaceful possession of the leased premises. It also argues that the injunction protects its employees' rights to be free from interference while working and protects its own right to the confidentiality of its manufacturing processes, inventory levels and corporate records. The record, however, indicates only that on two of the three occasions Mrs. Ferrell entered Plasti-Drum's buildings, brief verbal disagreements between her and an employee occurred. There is nothing in the record indicating that these two minor incidents caused substantial injury to Plasti-Drum's enjoyment of peaceful possession. Neither is substantial interference with the employees at the building shown as a

result of Mrs. Ferrell's visits. As to allegations of industrial espionage on her part, there is nothing to support them in the record. By virtue of the lease, Mrs. Ferrell, in her position as administrator of the estate, had a contractual right to much of the information Plasti-Drum now claims it needs to protect. There was an insufficient showing of a substantial and specific injury resulting from a violation of Plasti-Drum's rights. Given the contractual rights to enter the premises possessed by the estate, Plasti-Drum's proofs did not clearly establish its right to injunctive relief in the form that was granted by the trial court. The judgment of the court in entering the injunction is reversed and the injunctive order is vacated.

■■ The final two issues raised by appellant concern evidentiary matters ruled upon during trial. The first concerns the trial court's ruling that the proferred evidence of Mrs. Ferrell's costs, expenses and fees for the litigation could not be introduced into evidence. No fees were awarded to Ferrell by the court. Appellant on appeal points to provisions in the security agreement and in the lease agreement entitling her to costs and fees in enforcing the same. The provisions for fees and costs in the documents is not disputed by Plasti-Drum nor was it overlooked by the trial court. The court's ruling was based upon a failure to establish a proper foundation for introduction of the statement of attorney's fees and costs. The court refused to admit the evidence because the statement was not itemized as to expenses incurred for enforcement of the lease, as opposed to enforcement of the security agreement, and for other services performed on behalf of the estate. The court stated that it had no way of determining from the statements offered what portions were proper for the court to consider and what portions were not. No effort to further break down the bills was made on the part of attorneys for the estate, although the court indicated it would hear testimony from the attorneys to separate it out. No such testimony was forthcoming, nor was any offer of proof made. It is well settled that matters concerning the admission of evidence rest largely within the discretion of the trial court, and its decisions thereon will not be reversed unless a clear abuse of discretion is shown in the record. (*Cratsley v. Commonwealth Edison Co.* (1st Dist. 1976), 38 Ill. App. 3d 55, 347 N.E.2d 496; *Cole v. Brundage* (1st Dist. 1976), 36 Ill. App. 3d 782, 344 N.E.2d 583.) We find no abuse of discretion in the court's ruling with respect to the evidence offered concerning fees. Absent a breakdown of the fees so that they could be apportioned to the different aspects of the litigation, the court was without a clear and specific foundation from which to make any assessment. The evidence was properly refused for failure to make a proper foundation for its admissibility.

■■ The final evidentiary matter raised concerns the testimony of Wayne Johnson, an attorney for Plasti-Drum, and its former secretary. Mr.

Johnson was the attorney who prepared the documents signed by the parties on January 19, 1976, and he testified chiefly concerning those documents and their preparation. After reviewing the testimony involved, we find no prejudice which resulted to either party from the admission of the testimony of Wayne Johnson. As stated in *Walters v. Taylor* (1st Dist. 1976), 36 Ill. App. 3d 934, 939, 344 N.E.2d 765:

> "Error in the admission of evidence does not require a reversal where there has been no prejudice [citation] or where the evidence has not materially affected the result [citations]."

For the reasons stated, the judgment of the Circuit Court of Will County is affirmed in part as specified herein and is reversed in part as specified herein, and is remanded for further action by the trial court as specified and consistent with the views expressed in this opinion.

Affirmed in part; reversed and remanded in part.

SCOTT and BARRY, JJ., concur.