GLORIA M. PAULISON, Adm'r of the Estate of Gordon R. Paulison, Deceased, Plaintiff-Appellant, *v.* CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD, INC., *et al.*, Defendants-Appellees.

Second District   No. 77-59

Opinion filed July 24, 1979.

Sidney J. Karasik, of Chicago, and Paul W. Kaiser, of Waukegan, for appellant.

James P. Reedy and Associates, of Chicago, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of this court:

The plaintiff, as administrator of the estate of Gordon R. Paulison, deceased, brought a wrongful death action against the defendant Chicago, Milwaukee, St. Paul & Pacific Railroad Co., Inc., and some of its personnel to recover damages resulting from a railroad crossing accident. At the close of all evidence the case against co-defendant Dozier, who had been acting as the train's engineer, was dismissed. The jury returned a general verdict of not guilty in favor of the railroad, but in answer to a special interrogatory found that the deceased was not guilty of contributory negligence. Plaintiff appeals from the trial court's entry of judgment on the general verdict.

On December 13, 1973, the decedent was driving south in his International Harvester Scout on St. Mary's Road near Libertyville, Illinois, on his way to work. It was snowing heavily and visibility was reduced. While crossing defendant's railroad track, the decedent's vehicle was struck and demolished by a Chicago-bound commuter train. Paulison and his two passengers were killed instantly.

St. Mary's Road is a two lane highway. Near the railroad crossing in question the road runs through a cut. The crossing is protected by a sign and flashing lights. The vicinity was laden with shrubs, trees, and other vegetation. Plaintiff's witness, Neil Span, was driving a truck southbound over the crossing just ahead of the Paulison vehicle. Span testified that the warning flashers were so obstructed by snow that they were not blinking.

He didn't see the train until he heard its whistle blow. After he got his truck over the track he heard the impact of the train and the Paulison Scout.

The train involved was some 30 minutes behind schedule and was traveling approximately 60 m.p.h. The engineer of the train testified that at the whistle post about a quarter of a mile from the crossing he activated the train's warning bell and began to blow the train's horn. The engineer further testified he first saw the decedent's Scout when it was approximately two railroad car lengths away. The vehicle did not slow down. The engineer immediately applied the emergency brake and sounded the horn. The train collided with the Scout dead center. The train finally came to a stop approximately a quarter of a mile past the intersection. There was conflicting testimony of whether or not the warning flashers were visible at the time of the accident. A number of witnesses, including Span and Herbert Bracher, captain of the Liberty-ville Fire Department, testified that the flasher lights were so snow covered that day that no light was coming through. However, other witnesses, including railroad employees and a sheriff's investigator, testified that the flashing lights were visible after the accident.

On appeal plaintiff alleges a number of prejudicial errors including: the admission of evidence concerning prior accidents at the crossing, the failure to find that the general verdict and answer to the special interrogatory were inconsistent, the precluding of the jury from consideration of certain theories of the plaintiff's case, the giving of certain of the instructions tendered by the defendant, the restricting of the questioning of plaintiff's expert witness, and the admission of evidence of railroad speed limits.

Apart from the issue of the answer to the special interrogatory controlling the general verdict, the thrust of plaintiff's contentions on appeal is that the trial court prevented plaintiff from fully presenting her theory of the case to the jury. In plaintiff's view, the trial court's misunderstanding of plaintiff's case led not only to the dismissal of portions of the complaint and the corresponding denial of proposed jury instructions, but to alleged errors in evidentiary rulings as well.

Plaintiff offered the following instructions as her theory of the case:

"The plaintiff claims that her decedent suffered his death while exercising ordinary care and that the defendant was negligent in one or more of the following respects:

Operated, maintained and controlled its said crossing so that as a direct and proximate result thereof plaintiff's decedent suffered his death;

Operated, maintained and controlled its said crossing and

the approaches thereto so that the same were not reasonably safe, in violation of a statute of the State of Illinois;

Failed to provide automatic gates at the crossing notwithstanding the increase of traffic over it;

Failed to have a proper division of grade at said crossing;

Failed to keep its right-of-way clear of brush, shrubbery, trees and other unnecessary obstructions in violation of a rule of the Illinois Commerce Commission;

Operated, maintained and controlled its train at an excessive rate of speed in view of prevailing conditions so that as a direct and proximate result thereof plaintiff's decedent suffered his death;

Failed to keep a proper and adequate lookout for vehicular traffic approaching the said crossing from the North;

Failed to sound its horn, bell or whistle when one-quarter of a mile from the crossing and until the crossing was reached in violation of a certain statute of the State of Illinois;

Failed to apply the brakes, attempting to slow down or stop the forward movement of the train."

The trial court gave a similar instruction but eliminated the paragraphs referencing automatic gates, grade separation, and proper lookout.[1] Corresponding portions of plaintiff's complaint were stricken by the trial court. The trial court indicated it eliminated these sections because there was not sufficient evidence to support them and because it felt the first paragraph of the instruction given ("Operated, maintained and controlled its said crossing * * * so that the same were not reasonably safe, in violation of the statute of the State of Illinois") included the more detailed instructions requested by plaintiff's attorney.

■■ The rule in Illinois on jury instructions is expressed in *Hitt v. Langel* (1968), 93 Ill. App. 2d 386, 236 N.E.2d 118, where the court noted:

" ' "It is elementary that every party has the right to have the law applicable to his case stated fairly, clearly, distinctly and conveyed to the jury with substantial accuracy so that it may not be misled to the prejudice of the party * * *. He has the right to have the jury instructed upon his theories of recovery or defense * * *. Failure

---

[1] The relevant portion of the instruction, as given, is as follows:

"Operated, maintained and controlled its said crossing and the approaches thereto so that the same were not reasonably safe, in violation of a statute of the State of Illinois; Failed to keep its right-of-way clear of brush, shrubbery, trees and other unnecessary obstructions in violation of a rule of the Illinois Commerce Commission; Operated, maintained and controlled its train at an excessive rate of speed in view of prevailing conditions; Failed to sound its horn, bell or whistle when one-quarter of a mile from the crossing and until the crossing was reached in violation of a certain statute of the State of Illinois."

to give a party these rights which are tantamount to a fair and just trial, whenever the case is close upon its facts or the evidence conflicting, and the failure is material, requires that the verdict be set aside, the judgment reversed and the cause remanded for new trial." [Citation.] Each party is entitled to have the court instruct the jury on his theory of the case, provided that there is an evidentiary basis for the instruction. "All that is required in order to justify the giving of an instruction is that there is some evidence in the record to support the theory set out in the instruction." ' " (93 Ill. App. 2d 386, 393, quoting *Wrighthouse v. Brown* (1964), 52 Ill. App. 2d 191, 196.)

It is necessary, then, to determine if the omissions represented valid legal theories and if there was some evidence in the record to support the theories.

■■ To determine whether the failure to provide automatic gates was a valid basis for recovery, it is necessary to examine the State standards presented at trial. These standards, which are promulgated by the Illinois Department of Transportation, are addressed to the question of the appropriate measures to be taken to render railroad crossings reasonably safe, and are therefore relevant to the question of negligence. *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 273 N.E.2d 809.

The standards consider various factors: (1) design hourly volume (DHV), (2) index of hazard, and (3) single versus multiple tracks. The DHV is then used to classify the highway as "C", "D", "E", "F", etc. The index of hazard (or exposure factor) is "the product of the average daily traffic ten years after completion of construction times the current number of trains per day." The index of hazard is then used to determine normal treatment in regard to the appropriate protection for the crossing. In the instant case the DHV was between 642 and 963. The average daily traffic (ADT) in 1973 was approximately 6500 vehicles per day. There were 30 trains per day passing the crossing. The index of hazard using 10-year projected traffic growth was 308,070. The index of hazard using 1973 traffic statistics was 192,600. Based on these calculations, St. Mary's Road would be classified as a "C" highway (DHV over 400) and the general requirements would be "grade separate, when feasible, for two or more tracks or for one track with six or more train movements per day. Protect grade crossing by automatic signal devices." Based on the index of hazard of 192,600, the normal treatment would also be grade separation. The record indicates that the cost of a grade separation would range from $150,000 to several million dollars.

The primary difficulty with the use of the State standards, in the instant case, is their failure to recommend automatic gates for a single

railroad track no matter how great the volume of traffic or how large the index of hazard. The standards apparently view the purpose of the gates as protection against the possibility of two trains arriving at a double track crossing at the same time—one hidden behind the other. The gate would prevent the driver from crossing where his view might indicate the crossing would be safe. However, in the instant case the gates might also have provided additional safety where the flasher lights may not have been working or may not have been visible because of weather conditions. The cost of gates in 1973 would have been approximately $15,000.

■■ The question then becomes whether the State standards represent the totality of defendant's duty. This question was presented to this court in *Merchants National Bank v. Elgin, Joliet, & Eastern Ry. Co.* (1970), 121 Ill. App. 2d 445, 257 N.E.2d 216, *aff'd* (1971), 49 Ill. 2d 118, 273 N.E.2d 809. In that case, the State standards were also introduced. The railroad argued that it was not negligent because the Illinois Commerce Commission had not ordered a particular warning device for that crossing. In response, this court held: "[t]he fact that a statute may provide one precaution does not relieve the railroad from adopting such others as public safety or common prudence may dictate." (121 Ill. App. 2d 445, 456.) Clearly, the State standards are merely evidence of due care; they do not operate to relieve defendant of liability even if complied with. "A railroad company is required to exercise ordinary prudence and care in operating its trains to prevent injury to those who travel upon a public highway crossing its tracks." (*Bales v. Pennsylvania R.R. Co.* (1952), 347 Ill. App. 466, 474, 107 N.E.2d 179.) "The fact that the statute may provide one precaution does not relieve the company from adopting such others as public safety or common prudence may dictate." *Wagner v. Toledo, Peoria & Western R.R.* (1933), 352 Ill. 85, 91, 185 N.E. 236.

■ These cases indicate that there may have been a duty upon the defendant railroad to install automatic gates notwithstanding the fact that they were not required under the State standards. The trial court felt that the first paragraph of the instruction given covered automatic gates. However, the instruction given may have misled the jury by its reference to Illinois State statute. The jury may have thought this meant the State standards which indicated gates were not required. In fact the instruction references section 8 of "An Act in relation to fencing and operating railroads" (Ill. Rev. Stat. 1975, ch. 114, par. 62), which speaks only in terms of a general duty to make crossings safe.[2] The end result may have

---

[2] "Hereafter, at all of the railroad crossings of highways and streets in this state, the several railroad corporations in this state shall construct and maintain said crossings, and the approaches thereto, within their respective rights of way, so that at all times they shall be safe as to persons and property." Ill. Rev. Stat. 1975, ch. 114, par. 62.

been that the jury felt precluded from considering the possibility of defendant's negligence in not providing automatic gates aside from or in addition to any statutory State standard. The only instruction which arguably covers this point would be the general instruction on negligence. This is not a sufficient statement of plaintiff's theory of the case as mandated by *Hitt v. Langel.*

The only remaining requirement then is that there be some evidence in the record to support the theory. Plaintiff's expert testified as to the advantages of automatic gates over flashing lights alone. This is sufficient to support an instruction. Moreover, the failure to give this instruction cannot be said to be harmless error in this case. There was a great deal of evidence presented on the Department of Transportation standards focusing the jury's attention on them. Without the instruction on crossing gates, the jury may well have come to the erroneous conclusion that the standards circumscribed the extent of defendant's duty. The basic theory of the plaintiff was that the crossing was not adequately protected because of an interaction of relatively permanent conditions (number of trains, vehicular traffic and physical layout) and temporary conditions (*i.e.*, the extreme weather). This is the same theory approved by this court in *Merchant's National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1970), 121 Ill. App. 2d 445. The trial court's rejection of the proposed instruction precluded the jury from an adequate consideration of this issue and is error requiring reversal.

The other omitted instructions merit only brief discussion. The instruction on grade separation might properly have been given. However there was a separate instruction on the State standards and these standards clearly indicated the need for grade separation. Any error here, then, would be harmless. As for the proposed instructions on proper lookout and failure to apply the brakes, we agree with the trial court that there was not sufficient evidence to support these theories of negligence.

The question of whether the trial court properly struck certain portions of plaintiff's complaint is directly connected to the jury instruction issue discussed above. The stricken portion on the failure to provide automatic gates is a valid legal theory and should not have been stricken.

Having determined that this matter must be reversed and remanded, there is no need to discuss plaintiff's contention that the jury's answer to the special interrogatory conflicted with the general verdict. Plaintiff also raises a number of evidentiary questions, and since some of these issues are likely to reoccur at a new trial, they should be discussed here.

The trial court allowed the defendant to present evidence of three minor accidents which occurred at the crossing during the preceding 15 years. These were the only accidents occurring at the crossing and were

admitted for two purposes, (1) to show that the defendant had no notice that the crossing was dangerous, and (2) to show that the crossing was in fact not dangerous. The Illinois rule in this regard was expressed in *Wolczek v. Public Service Co.* (1930), 342 Ill. 482, 174 N.E. 577. *Wolczek* involved a personal injury suit against an electrical company for injuries sustained by an 11-year-old plaintiff when climbing on defendant's electrical tower located in a public park. Defendant offered to show that no claims of like injury had been made in 18 years. The trial court refused to allow the evidence. The supreme court reversed the trial court and held that proof of lack of injuries is competent to show lack of notice (*Wolczek*, at 501).

Safety evidence, however, is apparently not admissible to show that the condition itself was not dangerous. This position was expressed in *Mobile & Ohio R.R. Co. v. Vallowe* (1905), 214 Ill. 124, 73 N.E. 416. Subsequent cases have allowed safety evidence to show lack of notice (*Clauson v. Lake Forest Improvement Trust* (1971), 1 Ill. App. 3d 1041, 275 N.E.2d 441; *Hardman v. Helene Curtis Industries, Inc.* (1964), 48 Ill. App. 2d 42, 198 N.E.2d 681, and *Chilton v. Cook County School District No. 207* (1975), 26 Ill. App. 3d 459, 325 N.E.2d 666), but these cases do not reach the question of whether the evidence is admissible to show lack of dangerousness. *Hack v. New York, Chicago, & St. Louis R.R. Co.* (1960), 27 Ill. App. 2d 206, 169 N.E.2d 372, which held that the fact that one person escaped injury is not admissible to show that danger did not exist, indicates the rule in *Mobile* is still intact.

■■ While there has been a modern trend toward allowing evidence of a lack of prior accidents to be admissible to prove both lack of notice and absence of a dangerous condition (see McCormick, Evidence, at 477 (2d ed. 1972); Annot., 31 A.L.R. 2d 190 (1953), and Annot., 70 A.L.R. 2d 167 (1960)), there are no Illinois cases allowing such evidence to be used to show the nature of the condition itself. The trial court commented on several occasions that the evidence could be used for both purposes. We find that it was error to admit this evidence to show the absence of a dangerous condition.

■■ Plaintiff further contends that the evidence should not have been admitted because notice was not an issue in this case. We agree. In all the cases where a lack of prior accidents was admitted to show a lack of notice, notice was clearly at issue. (In *Wolczek* defendant was alleged to have knowledge that the tower was an attractive nuisance to children; in *Clauson* defendant was only negligent if on notice of the ice build-up that caused plaintiff's injury; in *Hardman* the lack of prior complaints was allowed into evidence to refute an allegation that plaintiff knew its product was flammable; in *Chilton* lack of prior trampoline accidents was

relevant as the complaint alleged that the defendant school teacher knew of previous accidents but still persisted in encouraging students to perform a certain stunt.) In the present case notice was not a contested issue. Plaintiff's complaint did allege that certain conditions (*i.e.*, the physical layout of the crossing and the existence of vehicular traffic) were known to the defendant. However defendant never seriously denied having such knowledge. At issue here was the hazardous nature of the crossing as this would define the extent of the defendant's duty. Notice is not an element of this duty as the courts of this State have long held that a railroad is charged with knowledge of the extent of the danger at its crossings. (*Maltby v. Chicago Great Western Ry. Co.* (1952), 347 Ill. App. 441, 106 N.E.2d 879; *Willett v. Baltimore & Ohio Southwestern R.R. Co.* (1936), 284 Ill. App. 307, 1 N.E.2d 748.) Thus we find that the trial court erred in admitting the evidence of prior accidents.

■■ Plaintiff alleges a number of other evidentiary errors including the exclusion of an accident report prepared by employees of the railroad, the restricting of the testimony of plaintiff's expert witness, and admission of defense evidence pertaining to railroad speed limits. It is well settled that the admission of evidence rests largely in the discretion of the trial court and its decisions should be reversed only for a clear abuse of discretion. (*Cratsley v. Commonwealth Edison Co.* (1976), 38 Ill. App. 3d 55, 347 N.E.2d 496.) In examining each allegation of an evidentiary error, we find no instance where there was a clear abuse of discretion.

Finally plaintiff argues that the following jury instruction, submitted by the defendant and given by the trial court, was improper:

> "There was in force in the State of Illinois, at the time of the occurrence in question, a certain statute which provides in pertinent part that:
>
>> 'Whenever any person driving a vehicle approaches a railroad grade crossing such person must exercise due care and caution as the existence of a railroad track across a highway is a warning of danger, and under any of the circumstances stated in this Section, the driver shall stop within 50 feet but not less than 15 feet from the nearest rail of the railroad and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
>>
>>> (1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train;
>>>
>>> * * *
>>>
>>> (3) A railroad train approaching a highway crossing emits a warning signal and such railroad train, by

reason of its speed or nearness to such crossing, is an immediate hazard;

(4) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing;

(5) A railroad train is approaching so closely that an immediate hazard is created.'

If you decide that the decedent violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the decedent was contributorily negligent before and at the time of the occurrence."

Plaintiff's objection to this instruction is that under the facts of this case a driver would not have been adequately warned and thus not required to stop for the approaching train and that the instruction tends to infer that the railroad has no duty to travelers on the highway.

Defendant's instruction is an accurate statement of Illinois law (Ill. Rev. Stat. 1973, ch. 95½, par. 11—1201). It was for the jury to decide if a driver would be required by this statute to stop under the facts of this case. The possible existence of this motorist duty would not necessarily infer a lack of duty on the part of a railroad. The presence of other instructions detailing a railroad's duty would negate the possibility of jury confusion. Indeed, in the present case, despite this instruction, the jury found that the decedent was not contributorily negligent.

We hold that the trial court's rejection of the instruction on crossing gates and its striking of the corresponding portion of plaintiff's complaint were reversible error. Further we find that it was error to admit evidence of a lack of prior accidents. Therefore we reverse the judgment of the Circuit Court of Lake County and remand this cause for a new trial.

Reversed and remanded.

GUILD and NASH, JJ., concur.