PHYLLIS C. SHEAHAN, Indiv. and as Special Adm'r of the Estate of Gregory P. Coghlan, Deceased, Plaintiff-Appellant, v. NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—89—2856

Opinion filed April 3, 1991.—Rehearing denied April 26, 1991.

Patrick J. Kenneally, Ltd., of Chicago (Thomas L. Trinley, of counsel), for appellant.

Oppenheimer, Wolff & Donnelly, of Chicago (James A. Fletcher, of counsel), for appellees.

JUSTICE WHITE delivered the opinion of the court:

Plaintiff Phyllis Sheahan appeals from an order of the circuit court entering summary judgment in favor of defendants Northeast Illinois Regional Commuter Railroad Corporation (NIRCRC) and Robert Ferrie. Plaintiff argues that genuine questions of fact existed on the issue of the parties' comparative negligence and, therefore, summary judgment was improper.

On February 11, 1982, at approximately 8:15 p.m., a car driven by Gregory Coghlan was struck by a NIRCRC train operated by Robert Ferrie. The collision occurred at a railroad grade crossing located at 111th and Hale in Chicago, Illinois. Coghlan was seriously injured and was hospitalized from the date of the accident until his death in May 1984.

Plaintiff, Coghlan's mother, filed a wrongful death action against defendants. Plaintiff's action alleged that the accident was the result of defendants' negligence in failing to maintain a proper lookout; operating their train at an excessive speed; failing to brake in a timely manner; failing to warn of the train's approach; failing to remove structures which blocked the view of the train's operating crew; and failing to guard the crossing.

Defendants filed an answer and affirmative defense denying plaintiff's allegations and alleging that Coghlan's negligence was the proximate cause of the accident. Subsequently, defendants filed a motion for summary judgment. Attached to defendants' motion were the affidavits of Roger Boylan, Robert Ferrie, and James Renfrow.

Roger Boylan was a long-time friend of Gregory Coghlan. In his affidavit, Boylan stated he and Coghlan had dinner together on the evening of February 11, 1982, and were on their way to visit Coghlan's girlfriend when the accident occurred. Coghlan was driving his mother's car and Boylan was in the front passenger seat. The car was travelling west on 111th Street. About two blocks east of the railroad crossing, Boylan noticed that the red crossing lights were

flashing. Boylan stated that Coghlan began to speed up and that he turned to Coghlan and pleaded with him not to try to beat the train. Boylan stated that Coghlan drove into the crossing and the car was struck by a train coming from the south.

Robert Ferrie stated in his affidavit that on February 11, 1982, he was operating NIRCRC train No. 522, which ran from Joliet, Illinois, to Chicago's La Salle Street station. One of the stops train No. 522 was scheduled to make was at a station located just north of the 111th and Hale Street crossing. Ferrie stated that, as the train approached this crossing, he set the air brake in preparation for the station stop. Ferrie further stated that the head beam on the cab was shining brightly, the cab bells were ringing, and he could see that the crossing gates were down and the red signal lights were flashing. As the train entered the crossing, Ferrie heard the sound of the cab colliding with another vehicle. However, he stated that because of the height of the cab he could not see the vehicle with which the train collided.

In his affidavit, James Renfrow stated that, in 1982, he was an assistant division engineer for NIRCRC and that he was responsible for inspecting and testing signals located at NIRCRC crossings. According to Renfrow, the automatic flashing light signal and gate mechanisms at the 111th Street crossing had been inspected on January 29, 1982, two weeks before the accident, and were working properly on that date. Renfrow stated that when he was called to the scene immediately after the accident, he inspected the signal and gate equipment and found no damage and saw nothing that appeared to be out of order. Renfrow then tested the signal and gate equipment and found that they were working properly.

In arguing that they were entitled to summary judgment, defendants contended that the statements in the affidavits established that it was Coghlan's negligence in driving past a lowered gate and into the path of the oncoming train that was the sole proximate cause of the accident.

In her response to defendants' motion, plaintiff argued there was evidence that defendants allowed two unsafe conditions to exist at the 111th Street crossing. These were (1) a "short" crossing gate that failed to block the left-hand lane of traffic; and (2) a building, located at the southeast corner of the intersection of the crossing and 111th Street, that obstructed the view of the operating crew of the train. Plaintiff argued that summary judgment would be improper because there was a question of fact of whether defendants were negligent in

failing to correct these alleged defects or in failing to take adequate precautions in light of their presence.

Following a hearing, the trial court entered an order granting defendants' motion for summary judgment. The court held that there was no breach of duty on the part of the railroad and that even if the railroad were negligent, its negligence was not the proximate cause of the accident.

In her appeal from the trial court's order, plaintiff argues that defendants had a duty to provide long crossing gates forming a physical barrier to traffic and that defendants' breach of this duty was a proximate cause of the collision. We disagree.

■ It has long been held in Illinois that a railroad's duty with respect to crossings is to provide adequate warning to motorists that a train is approaching. (*Langston v. Chicago & North Western Ry. Co.* (1947), 398 Ill. 248, 75 N.E.2d 363; *Hamilton v. Atchison, Topeka & Santa Fe Ry. Co.* (1988), 175 Ill. App. 3d 758, 530 N.E.2d 268; *Bassett v. Burlington Northern R.R. Co.* (1985), 131 Ill. App. 3d 807, 476 N.E.2d 31; *Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 458 N.E.2d 530; *Niemi v. Sprague* (1937), 288 Ill. App. 372, 8 N.E.2d 707.) Plaintiff argues that this duty was expanded when the Illinois Department of Transportation (IDOT) adopted the Manual on Uniform Traffic Control Devices for Streets and Highways, a publication of the Federal Highway Administration.

In a section on the use of automatic gates at railroad crossings, the manual states:

> "On two-way streets, the gates should cover enough of the approach roadway to physically block the motorist from driving around the gate without going into the opposing traffic lane."

In arguing that this language imposes a duty on a railroad to provide a physical barricade at railroad crossings, plaintiff relies on what she refers to as the *Darling—Merchants—Paulison* line of case law. (*Merchants National Bank v. Elgin, Joliet & Eastern R.R. Co.* (1971), 49 Ill. 2d 118, 273 N.E.2d 809; *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253; *Paulison v. Chicago, Milwaukee, St. Paul & Pacific R.R., Inc.* (1979), 74 Ill. App. 3d 282, 392 N.E.2d 960.) We have reviewed these cases, and we find that they have very little bearing on the case we are presently considering.

In *Darling*, a medical malpractice action, the issue before the supreme court was the admissibility of State Department of Health regulations, American Hospital Association standards of hospital accreditation, and the defendant hospitals' bylaws. The hospital argued that this evidence was irrelevant and that its duty should have been deter-

mined by the care customarily offered by hospitals in the community. In response, the supreme court noted that there were cases in which the duty owed was determined by the general practice of the calling. However, the court also noted that, because a whole calling may have unduly lagged in the adoption of new and available devices, "[i]t never may set its own tests, however persuasive be its usages. Courts must in the end say what is required ***." (*Darling*, 33 Ill. 2d at 331.) Accordingly, the court ruled that the evidence was admissible on the question of what responsibilities were desirable and feasible for the hospital to assume. 33 Ill. 2d at 332.

This reasoning was followed in *Merchants*, where a railroad argued the trial court erred in admitting into evidence a publication that set out factors to be considered in determining the treatment of a railroad crossing. The railroad contended the publication was inadmissible because the standards it contained had not been adopted by it or by the Illinois Commerce Commission, which exercised exclusive jurisdiction over grade crossing regulation. In upholding the admission of the publication, the supreme court held that it performed the same function as the regulations, standards, and bylaws admitted in *Darling*. *Merchants*, 49 Ill. 2d at 125.

In *Paulison*, the issue was the admissibility of standards promulgated by IDOT for use in determining whether a crossing should be protected by automatic gates or signal devices. The appellate court ruled the standards were relevant to the question of negligence. *Paulison*, 74 Ill. App. 3d at 287.

■ What distinguishes these cases from the case before us is that, in each, the courts held that the various standards, regulations, and publications at issue could be used in determining what responsibilities and duties were owed by the defendants. In the present case, however, the responsibilities and duties owed under the facts presented have already been determined by the courts.

As we stated above, the duty of a railroad at a crossing is to provide warning that a train is approaching. While the courts in *Merchants* and *Paulison* ruled that evidence similar to the manual relied upon by plaintiff may be admissible in determining whether a railroad provided an adequate warning or whether it should have used some other type of device or crossing treatment to provide the warning, no court has held that such evidence expands the duty owed by a railroad beyond that of providing a warning.

Here, the warning signals at the 111th Street crossing were working and Coghlan was aware that a train was approaching. Thus, defendants met their duty of providing the required warnings. They

were not required to provide a physical barricade to the crossing, and they cannot be held liable for their failure to do so.

Plaintiff also advances the argument that summary judgment was improper because there was a question of fact of whether defendants failed to exercise due care in light of defects present at the crossing. Plaintiff argues that the combination of the short gate and the obstruction created a hazardous condition and defendants' negligence in failing to adopt safety procedures to guard against this condition was a proximate cause of the accident.

In support of her argument, plaintiff relies on the deposition testimony of James Renfrow and Paul Riggs, NIRCRC safety superintendent. Riggs and Renfrow stated that when a crossing gate is broken, the control tower notifies the crews of approaching trains to proceed with caution and be prepared to stop if they perceive a danger or hazard. Plaintiff contends that had this "slow and prepare to stop" procedure been utilized to protect against the hazard presented by the short gate and the obstruction, defendants' train would have stopped before entering the crossing and the accident would have been avoided. Plaintiff's arguments are not persuasive.

The slow-and-stop procedure was not utilized by defendants to guard against the possibility that a motorist would disregard the warnings given by the crossing signals. The procedure was utilized to protect motorists from the hazards created by broken gates. The gates at the 111th Street crossing were not broken. They were tested two weeks before the accident and were fully operational at the time of the accident. The gates were performing the warning function for which they were designed, and defendants had no reason to follow the procedure used in cases of broken gates.

■■ ■ Although the issue of proximate cause ordinarily is a question of fact, it becomes a question of law where the undisputed facts are such that no reasonable person could infer facts that a defendant's acts were the cause of a plaintiff's injuries. (*Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 473 N.E.2d 531.) In the present case, we do not believe that it could be reasonably inferred that defendant's failure to utilize a procedure designed to give warning when normal warning devices are inoperable was the proximate cause of injuries suffered by a motorist who completely disregarded working warning signals.

■ The facts presented establish that defendants fulfilled their duty to Coghlan by warning him that a train was approaching. Defendants were not required to anticipate and guard against the possibility that Coghlan would disregard the warning (*Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 537 N.E.2d 738); rather, they

had the right to assume Coghlan would exercise due care for his own safety (*Frankenthal*, 120 Ill. App. 3d at 415). Plaintiff failed to do so, and we find the trial court correctly concluded that plaintiff's failure to heed the warnings given was the sole and proximate cause of the accident.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CERDA, P.J., and GREIMAN, J., concur.