GEORGE BELL, Plaintiff-Appellant, v. RICHARD HILL, Defendant-Appellee.

First District (6th Division)    No. 1—92—4123

Opinion filed February 24, 1995.

Roy P. Amatore and Kash & Szewczyk, both of Chicago (Conrad Szewczyk, of counsel), for appellant.

Williams & Montgomery, of Chicago (Barry L. Kroll, James K. Horstman, Thomas F. Cameli, and Lloyd E. Williams, Jr., of counsel), for appellee.

JUSTICE ZWICK delivered the opinion of the court:[1]

Plaintiff, George Bell, brought suit for damages against defendant, Richard Hill, and Hill's employee, Donald M. Harvey. Plaintiff alleged that Harvey was negligent in driving a tractor-trailer through a Chicago intersection by failing to keep a proper lookout and that the trailer portion of Hill's vehicle struck the car plaintiff was driving. While plaintiff sustained no immediate physical injuries, he claimed to have suffered a heart attack a week later as a result of the accident. A jury returned a verdict in favor of the defendant. Plaintiff appeals pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

The following issues are presented for our review: (1) whether the appellate court has proper jurisdiction over the parties' dispute; (2) whether the trial court committed error in refusing to tender plaintiff's Illinois Pattern Jury Instruction on the statutorily imposed standard of care required of a driver in making a "right-turn-on-red"; (3) whether the trial court committed error in allowing defendant's attorney to cross-examine the plaintiff regarding his ownership of an airplane and horses; (4) whether the plaintiff was unfairly prejudiced by defendant's cross-examination regarding an unrelated altercation between the plaintiff and another driver; and (5) whether defense counsel improperly impeached plaintiff's treating physician.

The traffic accident upon which this suit is based occurred on December 4, 1989. Both plaintiff and Donald Harvey were travelling north on Halsted Street as they approached the intersection at Canalport. Harvey drove a tractor-trailer combination. Harvey made a right turn onto Canalport and the trailer portion of the tractor-trailer struck the left front side of the car plaintiff was driving.

Initially, plaintiff brought suit along with the owner of the car, Cash Registers, Inc. Plaintiff alleged that he was so upset by the incident that he suffered a heart attack a week later. He claimed $27,000 in special damages. Cash Registers, Inc., claimed to have suffered $1,000 in property damage.

During trial plaintiff testified that he stopped at the light and a "semi" pulled up next to his car on the left side. He said that "nothing was transpiring." Then, "all of a sudden," the semi made a right turn from the left lane and struck his car. On cross-examination, plaintiff stated that he had been waiting at the intersection "30, 40

---

[1]While Justice Zwick did not serve as a member of the panel which heard oral argument in this case, he has read the briefs, listened to the audio tapes of oral argument and has otherwise fully participated in the disposition of this case.

seconds, whatever it takes to change a light." He said that he could not see the color of the light once the truck began its turn.

Fred Cvetko, plaintiff's brother-in-law, testified he was sitting in the passenger side of the car at the time of the collision. According to Cvetko, the plaintiff pulled the car up to the intersection, about two to three feet from the curb, when a truck came up along the left side of the car, very close. Cvetko said that when the light changed, the truck made a right turn and during the turn the rear wheels of the truck collided with the left side of the car.

Donald Harvey, called as an adverse witness during plaintiff's case, testified that he was driving the truck north on Halsted. He stated that Halsted has only a single lane at Canalport, but that there is a bus stop area to the right of the intersection. South of this area is a lane for parked cars. He said he began his turn onto Canalport from as close as possible to the curb so that the trailer portion of the truck would not roll over the curb or strike a pole. He said that there were no vehicles to the right of his truck as he began his right turn. He said that when he began to proceed east on Canalport, he noticed that a compact car had pulled into the bus-stop lane and that the right rear wheels of the trailer and the left-front of the compact car had collided.

The jury returned a verdict in favor of the defendant and the court entered judgment on the verdict on January 23, 1992.

Defendant raises as an initial issue the question of whether the appellate court has proper jurisdiction over this appeal. Defendant claims the appellate court does not have proper jurisdiction because the trial court struck the plaintiff's post-trial motion and this order was never vacated. It is incumbent upon an appellate court to dismiss an appeal where jurisdiction is lacking. *Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 440, 490 N.E.2d 1252; *Hamilton v. Williams* (1992), 237 Ill. App. 3d 765, 772, 604 N.E.2d 470.

It is necessary at this juncture to review the post-trial proceedings. Plaintiff filed his post-trial motion directed against the judgment on February 24, 1992, within 30 days of the entry of judgment on January 23, 1992. The motion was continued from time to time until June 22, 1992, when, for reasons not appearing in the record, the motion was "stricken." The plaintiff, undeterred, set the motion for hearing on July 23, 1992. On this day the trial court continued the matter. The defendant filed a response to plaintiff's post-trial motion on August 5, 1992, and argued its merits before the trial court on September 9, 1992. Defendant, on September 28, 1992, filed a memorandum of law again addressing the merits of plaintiff's arguments. The case was again continued, and both sides appeared for

hearing on October 6, 1992. At that time the court denied plaintiff's request for post-trial relief. Plaintiff filed a notice of appeal within 30 days, on November 5, 1992.

An appeal from a final judgment is perfected when a timely notice of appeal is filed in the circuit court. (134 Ill. 2d Rules 301, 303.) No other step is jurisdictional. (*People ex rel. Anders v. Burlington Northern, Inc.* (1975), 31 Ill. App. 3d 1001, 1003, 335 N.E.2d 102.) While a notice of appeal must ordinarily be filed within the 30 days that follow the entry of a final judgment, Supreme Court Rule 303(a)(1) extends the time for filing a notice of appeal by providing that a notice of appeal is timely if filed within 30 days after the entry of an order disposing of a post-trial motion directed against the judgment. (134 Ill. 2d R. 303(a)(1).) Once a trial court rules on the merits of such a motion, the 30-day period for filing the notice of appeal commences to run. (*Bell Federal Savings & Loan Association v. Bank of Ravenswood* (1990), 203 Ill. App. 3d 219, 224, 560 N.E.2d 1156.) The circuit court loses jurisdiction when 30 days pass from the time final judgment is entered without a post-trial motion directed against the judgment being filed (*Fox v. Department of Revenue* (1966), 34 Ill. 2d 358, 215 N.E.2d 271), when 30 days pass from the time the court disposes of such a timely filed post-trial motion (*Sears v. Sears* (1981), 85 Ill. 2d 253, 259, 422 N.E.2d 610) or when a notice of appeal is timely filed (*City of Chicago v. Myers* (1967), 37 Ill. 2d 470, 472, 227 N.E.2d 760), whichever comes first.

The case of *Yazzin v. Meadox Surgimed, Inc.* (1991), 224 Ill. App. 3d 288, 586 N.E.2d 533, presents facts similar to those now at issue. In *Yazzin*, the plaintiff-appellant did not move to vacate the trial court's order "striking" her timely filed post-trial motion. Instead, she filed, six days later but more than 30 days after the entry of final judgment, a "Re-Notice of Motion." A hearing was held on the renoticed motion and the court entered an order denying relief. The plaintiff then filed a notice of appeal within 30 days. The appellate court determined that it did not have proper jurisdiction over the case because the notice of appeal was not brought within 30 days of the final judgment and because the extension of time for filing the notice of appeal provided by Rule 303(a)(1) did not apply to the stricken post-trial motion. See *Yazzin*, 224 Ill. App. 3d at 291.

In both *Yazzin* and in this case the plaintiffs' timely motions seeking post-trial relief were stricken by the court more than 30 days after the court had entered a final order. An application of *Yazzin* to the present facts leads, therefore, to the same result.

■ Although we find the trial court lost jurisdiction 30 days after entry of final judgment, we note that jurisdiction may be revested by

the parties' active participation in proceedings which are inconsistent with the circuit court's prior order. (*People v. Kaeding* (1983), 98 Ill. 2d 237, 456 N.E.2d 11; *Gentile v. Hansen* (1984), 131 Ill. App. 3d 250, 475 N.E.2d 894.) Unlike in *Yazzin*, the plaintiff in this case has raised the revestment doctrine and the record affirmatively supports its application. (See *Yazzin*, 224 Ill. App. 3d at 291.) As we have indicated, the defendant filed a response to plaintiff's post-trial motion on August 5, 1992, and argued its merits before the trial court. Defendant further participated on September 28, 1992, by filing a memorandum of law again addressing the merits of plaintiff's post-trial arguments. Because the parties actively participated in the trial court proceedings after the circuit court's jurisdiction had ended, we find jurisdiction to have revested in the circuit court. Plaintiff subsequently filed a timely notice of appeal. We therefore reject defendant's jurisdictional challenge and turn to the merits of plaintiff's appeal.

Plaintiff argues that the trial court's refusal to tender to the jury an instruction based upon the language of Illinois Pattern Jury Instructions, Civil, No. 60.01 (3d ed. 1989) constituted reversible error. While plaintiff was able to put before the jury similar instructions regarding the general duty imposed upon a driver in making a turn at an intersection (see 625 ILCS 5/11—801, 11—804 (West 1992)), the court refused to tender plaintiff's instruction regarding the duty imposed upon a driver in making a "right-turn-on-red." The tendered instruction read:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain statute[2] which provided that:
>
>> '(a) Right or left turns on red signs. The driver of a vehicle intending to turn right when facing a steady RED signal may do so only from the lane closest to the right hand curb or edge of roadway.'
>
> If you decide that the parties violated the statute on the occasion in question, then you may consider the fact together with all the other facts and circumstances in evidence in determining whether and to what extent, if any the parties were negligent before and at the time of the occurrence." (Emphasis in original.)

Plaintiff notes that the violation of a statute is *prima facie* evidence of negligence. (*French v. City of Springfield* (1976), 65 Ill. 2d 74, 357 N.E.2d 438; *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93.) He claims that the court's failure to give this instruction may have allowed the jury to conclude that the defendant's conduct

---

[2]In fact, the quoted "statute" is section 27—215 of the Municipal Code of Chicago (Chicago Municipal Code § 27—215 (1990)).

was not negligent, when it might have concluded otherwise had it had the benefit of the instruction. Plaintiff claims that the failure to give the instruction requires reversal. See *Paulison v. Chicago, Milwaukee, St. Paul & Pacific R.R., Inc.* (1979), 74 Ill. App. 3d 282, 289, 392 N.E.2d 960.

▪ It is well settled that an instruction regarding a violation of a statute is not properly given unless the evidence is adequate to support a finding that a violation actually occurred. (*Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607; *Figarelli v. Ihde* (1976), 39 Ill. App. 3d 1023, 351 N.E.2d 624.) Our review of the record fails to indicate in any way that Harvey was turning while the light was red. Rather, the only testimony offered on the question of the color of the traffic light indicates that the light was green. Plaintiff himself stated that he had pulled up to the light and had been waiting for 30 to 40 seconds before the truck began to turn. He said he waited "as long as it takes to change a light." His brother-in-law, Fred Cvetko, specifically testified that the light changed before Harvey's truck began to move. While plaintiff argues that the jury could have found the light was red under these facts, such a finding would have been based upon speculation and not on the testimony of the witnesses. The failure to give the tendered instruction was not error.

Plaintiff next complains that the defendant was able to put before the jury the fact that he was a wealthy man, something he alleges prejudiced the jury against him. Specifically, plaintiff complains about the following exchange between himself and defense counsel:

"Q. Have you tried riding your horse since this accident in December of 1989?

A. Yes, I have tried.

Q. You have gone horseback riding?

A. No. I said I have tried riding it.

Q. Okay. Have you gone horseback riding?

A. No. I have tried riding a horse. I have never succeeded with it.

Q. Has any doctor ever told you that you can no longer ride horses?

A. He told me not to do anything that is going to upset me.

Q. You still do own a horse, isn't that true?

A. I certainly do.

Q. How many horses do you own?

A. Two."

After plaintiff's objection was overruled, the questioning continued:

"Q. Do you still own an airplane?

A. No, sir.

Q. Has any doctor told you can no longer fly that airplane?

A. Yes, sir."

Plaintiff points out that references to a party's financial status may constitute reversible error. (*Pagel v. Yates* (1984), 128 Ill. App. 3d 897, 471 N.E.2d 946; *Panos v. McMahon* (1974), 23 Ill. App. 3d 776, 320 N.E.2d 185.) While plaintiff concedes that his physical activities after his heart attack were relevant to the trial proceedings, he claims that the prejudicial impact of these questions outweighed their probative value. He also argues that whether or not he *owned* a horse or airplane has no relationship to the question of whether the plaintiff could still engage in the activities in question.

Parties have the right to cross-examine one another's witnesses on any matter which goes to explain, modify or discredit what was said on direct examination. (*Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 245, 529 N.E.2d 525.) The scope of cross-examination is not limited to the actual material discussed during direct examination but to the subject matter of direct examination. (*Kurrack v. American District Telephone Co.* (1993), 252 Ill. App. 3d 885, 902, 625 N.E.2d 675.) The extent of proper cross-examination falls within the broad discretion of the trial court, and the trial court's determination regarding the scope of cross-examination will not be reversed in the absence of an abuse of that discretion. *Piano v. Davison* (1987), 157 Ill. App. 3d 649, 510 N.E.2d 1066; see also M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 611.11, at 418-21 (5th ed. 1990).

■ We note that plaintiff's counsel asked plaintiff the following question during direct examination:

"Q. Is the resultant collision and the heart attack suffered afterwards—how has this affected your life?"

Plaintiff responded:

"A. Quite a bit. As I say, I can't fly my airplane. I can't ride a horse. I can ride a horse but I won't ride a horse. I don't want to give the wrong impression because I'm just afraid to do it, bouncing around on a horse. And I can't fly my airplane."

The defendant was clearly entitled to cross-examine the plaintiff based upon his direct testimony, and one way of discrediting the plaintiff's claims that he could no longer ride horses or fly an airplane was to emphasize the fact that he continued to maintain horses and an airplane long after his heart attack. It is the trial court that was in the best position to judge the issue of whether this line of questioning was more prejudicial than probative, and the trial court rejected the plaintiff's arguments during the trial proceedings and again when ruling on plaintiff's post-trial motion. Because the trial court did not abuse its discretion in allowing defendant's cross-examination, we find no error.

Plaintiff next argues that defendant was allowed to improperly cross-examine plaintiff's treating physician regarding an altercation that had occurred between the plaintiff and another driver in an unrelated incident. Plaintiff also raises an issue relating to the cross-examination of his medical expert, Dr. Jeffrey Kopin. The plaintiff, however, failed to preserve these issues during trial. They are therefore waived and we decline to address them. See *Von Seggren v. Smith* (1987), 151 Ill. App. 3d 813, 815-16, 503 N.E.2d 573; *Hirn v. Edgewater Hospital* (1980), 86 Ill. App. 3d 939, 949, 408 N.E.2d 970.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA, P.J., and RAKOWSKI, J., concur.